IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TODD MASEL, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE CHEMOURS COMPANY, MARK E. NEWMAN, SAMEER RALHAN, and JONATHAN LOCK, <br><br> Defendants. | Case No: <br><br> <u>JURY TRIAL DEMANDED</u> |

**CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES LAWS**

Plaintiff Todd Masel ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, and announcements made by Defendants, public filings, wire and press releases published by and regarding The Chemours Company ("Chemours" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

### I. NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Chemours securities between April 28, 2023 and February 28, 2024, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

### II. JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

### III. PARTIES

6. Plaintiff Todd Masel, as set forth in the accompanying certification, incorporated by reference herein, purchased Chemours securities during the Class Period and was economically damaged thereby.

7. Chemours describes itself as a "leading, global provider of performance chemicals that are key inputs in end-products and processes in a variety of industries."

8. The Company is incorporated in Delaware and its head office is located at 1007 Market Street Wilmington, Delaware 19801. Chemours' common stock trades on the New York Stock Exchange (the "NYSE") under the ticker symbol "CC."

9. Defendant Mark E. Newman ("Newman") served as the Chief Executive Officer ("CEO") and President throughout the Class Period. On February 28, 2024, he was placed on administrative leave.

10. Defendant Sameer Ralhan ("Ralhan") served as the Company's Chief Financial Officer ("CFO") and Senior Vice President from the beginning of the Class Period until June 6, 2023.

11. Defendant Jonathan Lock ("Lock") served as the Company's CFO and Senior Vice President from June 6, 2023 through the end of the Class Period. On February 28, 2024, he was placed on administrative leave.

12. Defendants Newman, Ralhan, and Lock are collectively referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

    (c) was privy to confidential proprietary information concerning the Company and its business and operations;

3

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

14. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

16. Chemours and the Individual Defendants are collectively referred to herein as "Defendants."

IV. **SUBSTANTIVE ALLEGATIONS**

**A. Materially False and Misleading Statements Issued During the Class Period**

17. On April 28, 2023, the Company filed with the SEC its quarterly report on form 10-Q for the period ended March 31, 2023 (the "1Q23 Report"). Attached to the 1Q23 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Newman and Ralhan attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

18. The 1Q23 Report contained the following statement regarding the Company's internal controls:

> We maintain disclosure controls and procedures designed to provide reasonable assurance that the information required to be disclosed in our reports filed or submitted under the Securities Exchange Act of 1934 ("Exchange Act") is recorded, processed, summarized, and reported within the time periods specified in the rules and forms of the U.S. Securities and Exchange Commission ("SEC"). These controls and procedures also provide reasonable assurance that information required to be disclosed in such reports is accumulated and communicated to management, including our Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), to allow timely decisions regarding required disclosures.
>
> As of March 31, 2023, our CEO and CFO, together with management, conducted an evaluation of the effectiveness of our disclosure controls and procedures as defined in Rule 13a-15(e) under the Exchange Act. Based on that evaluation, the CEO and CFO have concluded that these disclosure controls and procedures are effective at the reasonable assurance level.

19. This statement was materially false and misleading because the Company maintained weak internal controls which would ultimately lead to it being unable to file its 10-K for the 2023 fiscal year.

20. On July 28, 2023, the Company filed with the SEC its quarterly report on form 10-Q for the period ended June 30, 2023 (the "2Q23 Report"). Attached to the 2Q23 Report were certifications pursuant to SOX signed by Defendants Newman and Lock attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

21. The 2Q23 Report contained the following statement:

> We maintain disclosure controls and procedures designed to provide reasonable assurance that the information required to be disclosed in our reports filed or submitted under the Securities Exchange Act of 1934 ("Exchange Act") is recorded, processed, summarized, and reported within the time periods specified in the rules and forms of the U.S. Securities and Exchange Commission ("SEC"). These controls and procedures also provide reasonable assurance that information required to be disclosed in such reports is accumulated and communicated to management, including our Chief Executive Officer

("CEO") and Chief Financial Officer ("CFO"), to allow timely decisions regarding required disclosures.

As of June 30, 2023, our CEO and CFO, together with management, conducted an evaluation of the effectiveness of our disclosure controls and procedures as defined in Rule 13a-15(e) under the Exchange Act. Based on that evaluation, the CEO and CFO have concluded that these disclosure controls and procedures are effective at the reasonable assurance level.

22. This statement was materially false and misleading because the Company maintained weak internal controls which would ultimately lead to it being unable to file its 10-K for the 2023 fiscal year.

23. On October 27, 2023, the Company filed with the SEC its quarterly report on form 10-Q for the period ended September 30, 2023 (the "3Q23 Report"). Attached to the 3Q23 Report were certifications pursuant to SOX signed by Defendants Newman and Lock attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

24. The 3Q23 Report contained the following statement:

We maintain disclosure controls and procedures designed to provide reasonable assurance that the information required to be disclosed in our reports filed or submitted under the Securities Exchange Act of 1934 ("Exchange Act") is recorded, processed, summarized, and reported within the time periods specified in the rules and forms of the U.S. Securities and Exchange Commission ("SEC"). These controls and procedures also provide reasonable assurance that information required to be disclosed in such reports is accumulated and communicated to management, including our Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), to allow timely decisions regarding required disclosures.

As of September 30, 2023, our CEO and CFO, together with management, conducted an evaluation of the effectiveness of our disclosure controls and procedures as defined in Rule 13a-15(e) under the Exchange Act. Based on that evaluation, the CEO and CFO have concluded that these disclosure controls and procedures are effective at the reasonable assurance level.

25. This statement was materially false and misleading because the Company maintained weak internal controls which would ultimately lead to it being unable to file its 10-K for the 2023 fiscal year.

26. The statements contained in ¶¶ 18, 21, and 24 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) The Chemours Company maintained weak internal controls and; (2) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### B. THE TRUTH BEGINS TO EMERGE

27. On February 13, 2024, after market hours, Chemours filed with the SEC a current report on Form 8-K. Attached to this was a press release, in which Chemours announced the following:

> The Chemours Company ("Chemours" or "the Company") (NYSE: CC) today *announced that it has postponed the release of its financial results and conference call related to the fourth quarter and full year ended December 31, 2023, which had previously been scheduled for February 14, 2024 and February 15, 2024*, respectively. Chemours currently expects to issue its fourth quarter and full year 2023 financial results after market close on Wednesday, February 28, 2024. The Company currently expects to hold its webcast conference call, focused on Q&A, on Thursday, February 29, 2024, at 8:00 a.m. Eastern Standard Time. The Company also currently expects to file its Annual Report on Form 10-K for the year ended December 31, 2023 on February 29, 2024.
>
> The Company is delaying the release of financial results and the conference call because it needs additional time to complete its year-end reporting process. *The Company is evaluating its internal control over financial reporting as of December 31, 2023 with respect to maintaining effective controls related to information and communications. The Company's Audit Committee also needs additional time to complete a related internal review.*

7

(Emphasis added).

28. On this news, Chemours' stock fell $3.85 per share, or 12.6%, to close at $26.64 per share on February 14, 2024.

29. Then, on February 29, 2024, before the market opened, the Company filed with the SEC a late filing notice on form NT 10-K (the "Late Filing Notice"). In the Late Filing Notice, the Company disclosed, among other things, that it was evaluating material weakness with respect to the "tone at the top" set by senior management. The Late Filing Notice stated the following:

> The Chemours Company (the "Company") has determined that it is unable to timely file its Annual Report on Form 10-K for the fiscal year ended December 31, 2023 (the "Form 10-K") without unreasonable effort or expense for the reasons discussed below.
>
> ***The Company needs additional time to complete its year-end reporting process, including its review of internal control over financial reporting as of December 31, 2023***, and for the Audit Committee of the Board of Directors to complete a related internal review. ***As a result, the Company will delay its filing of its Annual Report on Form 10-K for the year ended December 31, 2023***.
>
> ***The internal review is being overseen by the Audit Committee with the assistance of independent outside counsel, which scope includes the processes for reviewing reports made to the Chemours Ethics Hotline, the Company's practices for managing working capital, including the related impact on metrics within the Company's incentive plans, certain non-GAAP metrics included in filings made with the Securities and Exchange Commission or otherwise publicly released, and related disclosures***. As a result, the Company is evaluating ***one or more potential material weaknesses in its internal control over financial reporting as of December 31, 2023 with respect to maintaining effective controls related to the control environment, including the effectiveness of the "tone at the top" set by certain members of senior management and information and communication components of the COSO internal control framework***. The Audit Committee is working with independent outside counsel to complete the review expeditiously, and the Company expects to report on any material weaknesses as of December 31, 2023 and its related remediation efforts in its Annual Report on Form 10-K.
>
> The Board of Directors of the Company has appointed Denise Dignam as the Interim Chief Executive Officer and Matthew Abbott as the Interim Chief Financial Officer (principal financial and accounting officer). Ms. Dignam has been serving as the Company's President – Titanium Technologies since March 2023 and previously served as President – Advanced Performance Materials from 2021 to 2023. She previously served as Vice

> President of Global Operations – Fluoroproducts, from 2019 to 2021; Global Senior Business Director – Fluoropolymers, from 2016 to 2019; and North American Business Director – Diversified Technologies and Industrial Resins, from 2015 to 2016. Previously, she worked at E.I. du Pont de Nemours and Company ("EID") in various roles, including Director of Global Supply Chain – Fluoroproducts, from 2013 to 2014; Global Business Manager of Sulfur Products, from 2009 to 2013; and Global Sales Manager of Clean Technologies from 2007 to 2009. Ms. Dignam joined EID in 1988 as a design engineer. Mr. Abbott has been serving as the Company's Senior Vice President & Chief Enterprise Transformation Officer, with responsibility for Enterprise Capital Projects and Engineering Technology, Information Technology, Cyber Security, Digital and Data Analytics, and Procurement, since June 2023. Mr. Abbott previously served as Chemours' Vice President, Digital and Data Analytics Leader from 2021 to 2023 where he was central to designing digital strategies to accelerate Chemours' journey to becoming a data-driven organization. Past roles at Chemours included Vice President, Chief Accounting Officer and Controller from 2019 to 2021; and Vice President and Chief Audit Executive from 2017 to 2019. Prior to joining Chemours, Mr. Abbott was a Partner at PricewaterhouseCoopers LLP ("PwC") for five years, with nearly twenty total years of experience serving PwC's industrial products and high-technology clients. These management actions follow the decision of the Board of Directors to place President and Chief Executive Officer Mark Newman, Senior Vice President and Chief Financial Officer Jonathan Lock and Vice President, Controller and Principal Accounting Officer Camela Wisel on administrative leave pending completion of the Audit Committee review described above. Accordingly, in addition to the factors described above, the Interim Chief Executive Officer and Interim Chief Financial Officer each need additional time to complete their reviews of the Annual Report on Form 10-K.
>
> ***The Company does not currently expect that it will be able to file the Form 10-K on or before the fifteenth calendar day following the February 29, 2024 prescribed filing date as a result of the circumstances described above.*** The Company will seek to resolve these issues as soon as practicable and plans to file the Form 10-K as soon as possible.

(Emphasis added).

30. Also on February 29, 2024, before the market opened, the Company filed with the SEC a current report on Form 8-K in which it announced the following:

> On February 28, 2024, the Board of Directors of The Chemours Company ("Chemours" or the "Company") appointed Denise Dignam as the Interim Chief Executive Officer and Matthew Abbott as the Interim Chief Financial Officer (principal financial and accounting officer). ***On February 28, 2024, the Board placed President and Chief Executive Officer Mark Newman, Senior Vice President and Chief Financial Officer Jonathan Lock and Vice President, Controller and Principal Accounting Officer Camela Wisel on administrative leave*** pending completion of the Audit Committee review described in the press release attached as Exhibit 99.1 to the Current Report on Form 8-K furnishing select unaudited preliminary estimates of operating results and other financial measures as of

9

and for the year ended December 31, 2023, furnished to the Securities and Exchange Commission on the date hereof.

(Emphasis added).

31.     Also on February 29, 2024, during market hours, The Wall Street Journal published an article entitled "Chemical Giant Chemours Suspends Top Executives, Opens Accounting Probe." The article stated the following, in pertinent part:

> Chemours shares fell more than 35% Thursday *after the company said it was putting its top executives on leave and delaying its audited financial filings amid an internal investigation into its bookkeeping, compensation and ethics-hotline reports*.
>
> *The announcement spooked investors who were expecting the Teflon maker to report its latest financial results. Instead, the company's board of directors said it was working with a law firm to conduct an investigation*. The stock's drop erased about $2 billion in market value at the share's lowest price Thursday.
>
> The company said it put Chief Executive Mark Newman on leave, as well as Chief Financial Officer Jonathan Lock and its chief accounting officer, Camela Wisel.
>
> *Newman has been CEO since 2021 and had previously served as the first finance chief when Chemours was carved out of DuPont. Lock became finance chief in June 2023 after holding other executive roles at the company since 2018*. Wisel became chief accounting officer in fall 2021 and was previously treasurer.
>
> \*     \*     \*
>
> In securities filings Thursday morning, Chemours said it is looking into reports made to its ethics hotline, how the company managed working capital, and how that in turn affected incentive compensation plans and custom metrics reported to investors and the Securities and Exchange Commission.
>
> It also said the review, led by its audit committee, is taking into account "the 'tone at the top' set by certain members of senior management."
>
> *Typically, when companies disclose internal reviews, the underlying issues stem from processes related to financial reporting, said Arun Viswanathan, a research analyst at RBC Capital Markets. "This appears that it's a bit broader and deeper than that," he said, pointing to the company's review of its ethics hotline.*
>
> Chemours said it is evaluating one or more potential material weaknesses in its internal control over financial reporting, and that it would delay its earnings release.

10

> The company expects to report 2023 sales of about $6 billion, down from $6.8 billion a year earlier, and a loss of $225 million to $235 million because of litigation and restructuring charges. ***It said it didn't expect to file audited results within 15 days and cautioned investors not to place "undue reliance" on preliminary results.***
>
> Denise Dignam, president of one of the segments, has taken over as interim CEO, while Matt Abbott, the chief enterprise transformation officer, has stepped in as interim finance chief. Abbott had previously served as chief accounting officer and controller at Chemours.
>
> Chemours said the audit committee's review includes the company's use of financial measures that fall outside U.S. generally accepted accounting principles, also called non-GAAP measures.
>
> In mid-December, the Securities and Exchange Commission queried Chemours about several non-GAAP measures in its securities filings, a few of which the company has used when setting executives' incentive pay. Lock, the CFO now on leave, signed the company's Dec. 22 response to the agency.
>
> It couldn't be determined if the non-GAAP metrics that the SEC was pressing Chemours about were the same non-GAAP metrics the company was referring to when describing its internal review.
>
> For years, executive-pay critics have argued that some kinds of adjustments made to calculate non-GAAP financial results are susceptible to manipulation by executives in ways that can increase the executives' pay, including by timing operating transactions carefully.

(Emphasis added).

32. On this news, On this news, the price of Chemours' stock fell $9.05 per share, or 31.51%, to close at $19.67 per share on February 29, 2024.

33. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## V. PLAINTIFF'S CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants

11

who acquired Chemours securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

36. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

40. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's securities met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- as a public issuer, the Company filed public reports;

- the Company communicated with public investors via established market communication mechanisms, including through the regular dissemination of press

releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

41. Based on the foregoing, the market for the Company securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the common units, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. This Count asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

47. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

48. Individual Defendants, who are or were senior executives and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company's personnel to members of the investing public, including Plaintiff and the Class.

49. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

50. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

51. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

52. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

53. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's misstatement of revenue and profit and false financial statements.

55. As officers of a public business, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

56. Because of their positions of control and authority as senior executives and/or directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company securities.

57. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

(c) awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## VII. JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 25, 2024

| | |
|---|---|
| *Of Counsel:* <br><br> Phillip Kim, Esq. <br> Laurence M. Rosen, Esq. <br> THE ROSEN LAW FIRM, P.A. <br> 275 Madison Avenue, 40th Floor <br> New York, New York 10016 <br> Telephone: (212) 686-1060 <br> Fax: (212) 202-3827 <br> Email: pkim@rosenlegal.com <br> Email: lrosen@rosenlegal.com | FARNAN LLP <br><br> */s/ Brian E. Farnan* <br> Brian E. Farnan (Bar No. 4089) <br> Michael J. Farnan (Bar No. 5165) <br> 919 N. Market Street, 12th Floor <br> Wilmington, DE 19801 <br> (302) 777-0300 <br> (302) 777-0301 <br> bfarnan@farnanlaw.com <br> mfarnan@farnanlaw.com <br><br> *Counsel for Plaintiff and the Proposed Class* |